CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6475
    FAX: (415) 436-7234
    wendy.garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-cr-00262 RS |
| Plaintiff, | **UNITED STATES' SENTENCING MEMO** |
| v. | Hearing Date: April 21, 2026 |
| SHANNON TANISAKI, | Hearing Time: 9:30 a.m. |
| Defendant. | |

## I.    BACKGROUND

From late 2018 to April 2023, defendant Shannon Tanisaki embezzled well over $700,000 from her employer, the Haynes Beffel and Wolfeld law firm. As the accounting manager, Tanisaki had access to the firm's checkbook. Tanisaki lacked authority to sign checks, however, so she forged the partners' signatures, writing checks to herself, her husband, and fictitious companies with their names as payees. Tanisaki then deposited the checks into bank accounts she either held individually or with her husband. Tanisaki attempted to disguise the fraudulent checks by altering the firm's Quick Books ledger to make it appear that the checks had been issued to entities familiar to the firm.

During the time she was embezzling money, Tanisaki had base salary of approximately $100,000, although she earned around $140,000 per year with overtime. Agents found that Tanisaki

spent most of the stolen money on online gambling.

For most of Tanisaki's employment, she was the only employee working in the accounting department.  In late 2022, Haynes Beffel hired another accounting employee.  The new employee discovered that Tanisaki had been paying herself unapproved and unearned overtime.  She also alerted Haynes Beffel that there were suspicious charges on the firm's credit card, many of which were made on Saturdays and Sundays, when employees were not expected to incur business expenses.  These included charges at Costco, restaurants, and for gift cards—charges that were not consistent with authorized business expenses.

Haynes Beffel decided to terminate Tanisaki in April 2023, in light of the foregoing credit card fraud and irregularities with her time sheet.  Around this time, the newly-hired employee also discovered that Tanisaki had been writing herself fraudulent checks.  During her exit interview, Tanisaki confessed to making personal charges on the firm's credit card.  She also confessed to writing fraudulent checks.  She apologized and blamed the theft on her addiction.

In November 2023, Haynes Beffel sued Tanisaki civilly in San Mateo Superior Court in an action captioned *Haynes Beffel & Wolfeld v. Shannon Tanisaki and Timothy Tanisaki*, No. 23-CIV-05535.  The firm asserted claims for breach of fiduciary duty, fraud, and conversion, among others.  In the fall of 2024, the parties reached a settlement.  As part of the civil settlement, Tanisaki executed a Stipulated Judgment for $500,000 in favor of the firm.  The firm recorded a $500,000 lien against the Tanisakis' home.  To date, Tanisaki has not made any payments on the Stipulated Judgment.

On August 27, 2025, a federal grand jury returned a three-count indictment, charging Tanisaki with three counts of Bank Fraud, in violation of 18 U.S.C. § 1344(2).  (ECF 1.)  On January 13, 2026, Tanisaki accepted responsibility for her crimes and pled guilty to all three counts.  (ECF 17.)

## II.    SENTENCING GUIDELINES CALCULATIONS

As set forth in the PSR, the Sentencing Guidelines calculations for Tanisaki's offense level are as follows:

a. **Base Offense Level, U.S.S.G. § 2B1.1(a):**                    **7**

b. **Specific offense characteristics:**                              **+14**

• **§ 2B1.1(b)(1)(H):  loss of at least $550,000**

     c. **Acceptance of Responsibility § 3E1.1:**     **-3**

     d. **Zero-Point Offender §4C1.1(a)**     **-2**

     e. **Total Offense Level:**     **16**

(*See* PSR ¶¶ 21-30.)  The parties have not reached any agreement regarding Tanisaki's criminal history. Probation has calculated that Tanisaki's criminal history score is zero, and she therefore falls into Criminal History Category I.  (*Id.* at ¶¶ 34-35.)  The government agrees with Probation's criminal history calculations.  As reflected in the PSR, the Guidelines range for imprisonment associated with total offense level 16 and Criminal History Category I is 21-27 months.  (*Id.* at ¶ 81.)

## III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.  The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

Ms. Tanisaki's crime was serious.  The embezzlement took place over many years and caused significant harm to the victim law firm.  Tanisaki held a position of trust at the firm—for many years, she was the sole employee in the firm's accounting department.  She abused this trust for her own personal gain, forging $787,217.00 of checks, made payable to herself or entities she controlled. Tanisaki knew this was wrong, as she attempted to cover her tracks by altering the firm's Quick Books ledger to hide her self-dealing.  In addition to forging checks, Tanisaki also mis-used the firm's credit card for personal expenses and paid herself unearned overtime.  (The losses for the credit card misuse

and unearned overtime are in addition to the $787,217.00 figure.)

The firm, in contrast, appears to have treated Tanisaki well.  Her yearly salary was $100,000, but was typically around $140,000 with overtime.  A.D., one of the firm's partners, viewed Tanisaki as a good friend, sharing daily conversations with her about work, life and his newborn son.  Tanisaki's betrayal was very difficult for A.D. to cope with, causing sleepless nights and the necessity of anxiety medication and therapy sessions.

The betrayal also caused substantial financial difficulties for the firm.  For the first time in the firm's history, it was unable to pay holiday bonuses.  The firm was forced to cut some employee salaries, put one employee in early retirement, and delay raises for other employees.  The firm's finances are much more precarious after the theft, and it is no longer able to contribute to community programs at the same level as it has done in the past.  Additionally, the firm's partners and employees were forced to spend countless hours investigating the scope of the fraud and assisting with a civil suit, prior to assisting the FBI with the investigation that led to the instant charges.  These lost hours were hours that the firm's partners could have billed out at rates in excess of $450 per hour.

The government recommends a custodial sentence of twelve months and a day.  This below-guidelines sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense.  Tanisaki's actions caused serious harm.  To her credit, she promptly accepted responsibility for her crimes and pled guilty.  Prompt payments on her restitution obligations would go a long way to demonstrating her remorse and starting the process of making her victim whole.

## IV.    RESTITUTION

Restitution is a significant factor in this case.  In her plea agreement, Tanisaki agreed to pay restitution of at least $787,217.00.  This sum, however, accounts for only the forged checks.  Tanisaki caused Haynes Beffel significant additional losses, including, but not limited to, unauthorized credit card charges, legal fees incurred in connection with suing Tanisaki civilly, and lost time that Haynes Beffel lawyers and staff spent investigating the matter and assisting their lawyers and the FBI.

Although not all of Haynes Beffel's lost time and attorney-fee expenditures are recoverable as restitution, the firm is entitled to recover for time and fees incurred assisting with "government investigations and criminal proceedings."  *Lagos v. United States*, 584 U.S. 577, 579 (2018); *see also*

*United States v. Brody*, No. 23-4358, 2025 WL 1864959, at *3 (9th Cir. July 7, 2025) ("[T]he district court properly included in the restitution the attorneys' fees incurred by [the victim] in its participation in (1) the government's investigation, (2) the prosecution of Brody, and (3) the criminal proceedings stemming from both.").

Haynes Beffel estimates that their lawyers lost over $100,000 worth of time assisting the FBI with its investigation—time that the lawyers could have otherwise billed out at their hourly rate of approximately $500 per hour. Accordingly, in addition to the $787,217.00 of restitution for the embezzled funds, the Court should order an additional $100,000 to compensate Haynes Beffel for its lost time assisting with the government investigation, for a total of $887,217.00 in restitution.

**V.    CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Tanisaki to twelve months and a day, to be followed by three years of supervised release, order her to pay $887,217.00 in restitution and a $300 special assessment. The Court should also impose the special conditions of supervised release agreed to by the parties in the plea agreement.

DATED:  April 14, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*Wendy M. Garbers*
WENDY M. GARBERS
Assistant United States Attorney